IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Michael Anthony McKeown, | ) | C/A No.: 1:10-1606-RMG-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Dr. Pacheko, of Mental Health; M/H Case Worker Mrs. Gardner; Medical Supervisor Ms. Cooke; Warden Cecilia Reynolds; and SCDC Director Jon E. Ozmint, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, proceeding pro se and in forma pauperis, is an inmate incarcerated at Kershaw Correectional Institution ("KCI"). He brought this civil rights action pursuant to 28 U.S.C. § 1983 alleging violations of his constitutional rights. Before the court is Defendants' Motion for Summary Judgment [Entry #44]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motion for summary judgment is dispositive, this Report and Recommendation is entered for review by the district judge.

I.      Factual and Procedural Background

Plaintiff alleges that Dr. Pacheco (incorrectly named as Dr. Pacheko) violated his constitutional rights by discontinuing his Neurontin medication on May 21, 2010 when he

was prescribed Cymbalta. Compl. at 3 [Entry #1].[1] Plaintiff claims that he should have been weaned off Neurontin. *Id*. Additionally, Plaintiff sues defendants Gardner and Cooke for their failure to intervene after they were made aware of Plaintiff's alleged withdrawals. *Id.* at 4–5. Defendant Reynolds, the warden of KCI, is sued for his failure grant the relief requested or respond to Plaintiff's emergency grievance. *Id.* at 6. Plaintiff similarly sues defendant Ozmint for failure to intervene. *Id.*

According to Defendants, Dr. Pacheco discontinued Plaintiff's prescription for Neurontin after the Plaintiff requested a prescription for Cymbalta. Pacheco Aff. at ¶¶ 11–16 [Entry #44-3]. Dr. Pacheco avers that there is "no medical or psychiatric reason against switching a patient from Neurontin to Cymbalta, so, based on the Plaintiff's request, and on the fact that from a medical standpoint his psychiatric complaints would be adequately addressed with Cymbalta as opposed to Neurontin, [Dr. Pacheco] prescribed Cymbalta." *Id.* at 16. According to Defendants, and undisputed by Plaintiff, due to Plaintiff's increased anxierty over the discontinuation of his Neurontin prescription, Dr. Pacheco requested a new prescription of Neurontin for Plaintiff, which he began taking on July 20, 2010. Defs.' Brief at 2 [Entry #44-2].

Defendants filed their motion for summary judgment on March 24, 2011. [Entry #44]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised

---

[1] Plaintiff argues that Dr. Pacheco is no longer a defendant because the record does not reflect that he was properly served. However, because failure to effect service of process and lack of personal jurisdiction are affirmative defenses that may be waived and Dr. Pacheco has not availed himself of these defenses, it appears he is still a proper defendant in this action.

Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [Entry #46]. Plaintiff filed a response in opposition to the Defendants' motion on April 27, 2011 [Entry #54] and the matter is now ripe for adjudication. Having carefully considered the parties' submissions and the record in this case, the court recommends granting the Defendants' motion for summary judgment.

II.     Discussion

    A.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; " or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    B.    Analysis

        1.    Medical Indifference

In the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 169–73 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by

>prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 103–105 (citations and footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

>[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 107.

The Fourth Circuit has also considered this issue in the case of *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id.* at 851 (citations omitted). Additionally, the *Miltier* Court found that prison staff are justified in relying in the medical staff's professional medical opinion regarding the appropriate medical treatment of inmates at the detention center. *See generally, Miltier*, *supra*.

In *Farmer v. Brennan*, the Supreme Court clarified that an officer must have "acted or failed to act despite his knowledge of a substantial risk of serious harm." 511 U.S. 825, 842 (1994). Additionally, the *Farmer* court noted that "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence" and that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* Additionally, the law is clear that disagreements between an inmate and medical providers does not amount to a constitutional violation. *See generally, Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Jackson v. Fair*, 846 F.2d 811 (1st Cir. 1988).

The Fourth Circuit has decided that there is "no underlying distinction between the right to medical care for physical ills and its psychological or psychiatric counterpart." *Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir. 1977). However, the *Bowring* court also noted that "[t]he right to treatment is, of course, limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." 551 F.2d at 47–48. The court further cautioned:

> In so holding, we disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment. The courts will not intervene upon allegations of mere negligence, mistake or difference of opinion.

*Bowring*, 551 F.2d at 48. The court also reiterated that "[a]lthough it is possible to categorize some forms of mental illness, diagnosis remains 'an extremely subjective art.'" *Bowring*, 551 F.2d at 48 n. 3.

In the instant case, Dr. Pacheco testified that there is no medical or psychiatric reason that Plaintiff's medication should not have been switched from Neurontin to Cymbalta. To the extent Plaintiff believes otherwise, it appears that Dr. Pacheco and Plaintiff have a disagreement regarding whether the replacement was a proper course of treatment. It is well-settled that disagreements between medical staff and inmates do not constitute a constitutional violation. *See, Miltier, supra*. Therefore, the undersigned submits that Dr. Pacheco is entitled to summary judgment. Additionally, Plaintiff has failed to show that the remaining Defendants knew of a substantial risk of harm to Plaintiff, as they are entitled to rely on the opinions of Dr. Pacheco, Plaintiff's treating psychiatrist, and had no authority to order the Neurontin for Plaintiff. For these reasons, it is recommended Defendants be granted summary judgment.

    2.    Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, *assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the

law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendants, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find that Plaintiff has established some theory of liability upon the part of Defendants, and therefore, the existence of a constitutional deprivation, Defendants are still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

III.     Conclusion

For the foregoing reasons, it is recommended that Defendant's motion for summary judgment [Entry #44] be granted and this case be dismissed with prejudice.

IT IS SO RECOMMENDED.

October 7, 2011                           Shiva V. Hodges
Florence, South Carolina                  United States Magistrate Judge