IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Michael Anthony McKeown,<br>           Plaintiff,<br><br>v.<br><br>Dr. Pacheko, of Mental Health; M/H Case Worker Mrs. Gardner; Medical Supervisor Ms. Cooke; Warden Cecilia Reynolds; and SCDC Director Jon E. Ozmint,<br>           Defendants. | Case No. 1:10-1606-RMG<br><br>**ORDER** |

    Plaintiff, proceeding *pro se* and in forma pauperis, filed this civil rights action pursuant to 28 U.S.C. § 1983. (Dkt. No. 1). As a result, this case was automatically referred to the United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b) and the Local Rules. Plaintiff alleges that Defendants violated his constitutional rights because they did not administer proper medical treatment. Defendants filed a motion for summary judgment on March 24, 2011 (Dkt. No. 44), to which the Plaintiff filed a response in opposition on April 27, 2011 (Dkt. No. 54). The Magistrate Judge has issued a Report and Recommendation that Defendants' motion for summary judgment should be granted. (Dkt. No. 56). The Magistrate Judge advised Plaintiff of the procedures and requirements for filing objections to the Report and the serious consequences if he failed to do so. Plaintiff has not filed objections to the R&R. As explained herein, this Court agrees with the Report and Recommendation and grants Defendants' motion for summary judgment and dismisses this action with prejudice.

**LAW/ANALYSIS**

    The Magistrate Judge makes only a recommendation to this Court. The recommendation

1

has no presumptive weight, and responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and this Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.* In the absence of specific objections to the Report and Recommendation, this Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198 (4th Cir. 1983).

Plaintiff contends that Dr. Pacheco[1] violated his constitutional rights by discontinuing his Neurontin prescription without properly weaning him off the drug when he was prescribed Cymbalta. (Dkt. No. 1 at 3). Plaintiff also brings this action against defendants Gardner and Cooke for failure to intervene when they became aware of Plaintiff's alleged withdrawals. *Id.* at 4-5. Additionally, Defendant Reynolds, the warden of Kershaw Correctional Institution, is sued for failure to grant the relief requested or respond to Plaintiff's emergency grievance. *Id.* at 5-6. Plaintiff also sues defendant Ozmint for failure to intervene. *Id.* at 6.

Through an affidavit provided by Dr. Pacheco, Defendants assert that Plaintiff informed Dr. Pacheco that he wished to try Cymbalta, Plaintiff believed that the Neurontin was causing him urinary retention, and because "there is no medical or psychiatric reason against switching a patient from Neurontin to Cymbalta. . .based on the Plaintiff's request, and on the fact that from a medical standpoint his psychiatric complaints would be adequately addressed with Cymbalta as

---

[1] Dr. Pacheco was incorrectly named as Dr. Pacheko. As noted by the Magistrate Judge, while Plaintiff argues that Dr. Pacheco is no longer a defendant because he was not properly served, Dr. Pacheco has not asserted any affirmative defenses regarding service of process or lack of personal jurisdiction and thus it appears he is a proper defendant in this action.

2

opposed to Neurontin, [Dr. Pacheco] prescribed Cymbalta to the Plaintiff." (Dkt. No. 44-2 at 3).[2] Defendants assert that Plaintiff resumed taking Neurontin for anxiety on July 20, 2010, as the Plaintiff expressed anxiety over stopping the Neurontin. (Dkt. No. 44-2 at 4).

The Supreme Court has stated that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976)(citations omitted). The deliberate indifference must be more than "an inadvertent failure to provide adequate medical care" and evidenced by sufficiently harmful acts or omissions. *Estelle*, 429 U.S. at 105-106. Fourth Circuit jurisprudence also establishes that alleged medical mistreatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness . . . . [N]evertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citations omitted). Additionally, the *Miltier* court noted that prison officials are entitled to rely on the professional opinion of the medical staff regarding the prisoner's treatment. *Id.* at 854-855. In reviewing the meaning of "deliberate indifference," the Supreme Court clarified that "it is enough that the [prison] official acted or failed to act despite his knowledge of a substantial risk of harm." *Farmer v. Brennan*, 511 U.S. 825 (1994).[3] It is also well established that disagreements between an inmate and medical providers is not a constitutional violation. *See generally*, *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Jackson v. Fair*, 846 F.2d 811 (1st Cir. 1988).

---

[2] Dr. Pacheco asserts that "[t]he purported withdrawal symptoms complained of by the Plaintiff are not possible, from a medical standpoint, with the discontinuation of Neurontin, but very likely with abrupt discontinuation of Desipramine." (Dkt. No. 44-2 at 4). Further, "the Desipramine was discontinued by the patient as he refused to take it and signed a refusal form" and "although very likely the Desipramine was causing the urinary retention the medication should have been tapered and discontinue[d]." *Id.* "When asked why he stop[ped] the Desipramine abruptly he admitted it was a mistake and that he realized it was a mistake." *Id.*

[3] As the Magistrate Judge noted, "knowledge of a substantial risk" which "is a question of fact" can be demonstrated by "the usual ways, including inference from circumstantial evidence" and "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

3

Although Plaintiff contends that he should have been "weaned off" Neurontin rather than switched to only Cymbalta, there is no medical or psychiatric support for this contention. It appears that, instead, there was a disagreement regarding whether such replacement was adequate treatment and it is well-settled that disagreements between medical staff and inmates do not constitute a constitutional violation. *See, Miltier, supra.* Dr. Pacheco is therefore entitled to summary judgment. Further, the Court concludes that the remaining Defendants are entitled to summary judgment because Plaintiff failed to show that they knew of a substantial risk of harm to Plaintiff, they were entitled to rely on the opinions of Dr. Pacheco and were not authorized to order Neurontin for the Plaintiff.

Defendants further contend that they are immune from suit in their individual capacities. The Supreme Court set forth the doctrine of qualified immunity in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982)[4] and in *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992) the Fourth Circuit provided further guidance:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298 (internal quotations and citations omitted).

As noted above, Plaintiff has not provided evidence that any constitutional violation took place. Even if Plaintiff were to establish some basis for a constitutional deprivation, Defendants

---

[4] "We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. The Magistrate Judge thoroughly addresses the standards for qualified immunity at Dkt. No. 56 at 8.

are entitled to qualified immunity. In the discretionary exercise of their respective professional judgments, Defendants did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

## CONCLUSION

After a thorough review of the record, relevant case law, and the Report and Recommendation, this Court agrees with the Magistrate Judge and **GRANTS** Defendants' motion for summary judgment (Dkt. No. 44) and **DISMISSES** this case with prejudice.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

October 27, 2011
Charleston, South Carolina